**David W. Criswell**, OSB No. 925930
dcriswell@balljanik.com
BALL JANIK LLP
101 SW Main St. #1100
Portland, OR 97204
Phone: (503) 228-2525
Fax: (503) 226-3910

Attorneys for Plaintiff Kenneth S. Eiler,
Chapter 7 Trustee

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. 14-30160-rld7 |
| **RITTER CHEMICAL, LLC,** | |
| Debtor | |
| **KENNETH S. EILER, TRUSTEE** | Adv. Proc. No. |
| Plaintiff, | **COMPLAINT** |
| v. | **(Recovery of Preferential Transfer From Initial Transferee, From the General Partner of the Initial Transferee, and From the Immediate Transferee)** |
| **ALDIS MANUFACTURING LTD.,** a Texas limited partnership, **REDACT, LLC,** a Texas limited liability company, and **THE ALASKAN UNIVERSAL IRREVOCABLE TRUST,** a trust, | |
| Defendants. | |

Kenneth S. Eiler, duly appointed Chapter 7 trustee (the "Trustee"), alleges as follows:

## NATURE OF ACTION

1.      This is an action brought by the Trustee to avoid and recover the Debtor's

preferential transfer of property to an insider (Aldis Manufacturing Ltd.).  Trustee also seeks to

recover the transfer or the value of the transfer from the general partner of Aldis Manufacturing

Ltd. from the immediate transferee (The Alaskan Universal Irrevocable Trust), an entity

Page 1 - **COMPLAINT**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

controlled by insiders of the Debtor which received assets subject to avoidance from Aldis Manufacturing Ltd., for no consideration and with full knowledge of the Trustee's preference claim.

## PLAINTIFF

2.       On January 14, 2014, Ritter Chemical, LLC filed a petition for relief under Chapter 7 of the Bankruptcy Code. Trustee Kenneth S. Eiler was then appointed to administer the Debtor's Chapter 7 bankruptcy estate for the benefit of the Debtor's creditors.

## DEFENDANT

3.       Defendant Aldis Manufacturing, Ltd, is a Texas limited partnership ("Aldis"). Defendant Redact, LLC ("Redact") is a Texas limited liability company and is the general partner of Aldis. The Alaskan Universal Irrevocable Trust is a trust under the dominion and control of George Ian Smith and Jamie Smith, who through various holding entities are the ultimate equity holders and persons in control of the Debtor, Aldis, and Redact.

## JURISDICTION

4.       This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(H) and (O).

## COMMON ALLEGATIONS

5.       This adversary proceeding is brought pursuant to 11 U.S.C. §§ 547(b) and 550(a) to avoid and recover the preferential transfer made by the Debtor to Defendant Aldis within the year prior to the filing of the petition.

6.       On January 14, 2014 (the "Petition Date"), the Debtor filed a voluntary Chapter 7 bankruptcy petition.

7.       On or about September 1, 2013, the Debtor transferred transferred assets and property and forgave obligations worth not less than $515,864.00 in the aggregate (together the "Transfer") to Aldis on account of alleged antecedent debt owing to Aldis in that same amount.

8.       The Transfer is described in a transaction summary attached hereto as Exhibit 1.

Page 2 - **COMPLAINT**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

9.      The Debtor and Aldis also entered into an Asset Purchase Agreement attached hereto as Exhibit 2 which further describes the Transfer.

10.      By letter dated March 16, 2014, the Trustee made demand upon Defendant to return the Transfer or the value thereof.  A copy of the Trustee's demand letter is attached as Exhibit 3.

11.      Despite such demand, Defendant has failed to return the Transfer.

12.      The Trustee is entitled to avoid the Transfer and recover property or its value for the benefit of the Debtors' creditors.

## FIRST CLAIM FOR RELIEF

### (Avoid and Recover Preferential Transfer
### Under 11 U.S.C. § 547(b))

13.      The Trustee restates and incorporates the allegations of paragraphs 1 through 12 above.

14.      The Transfer was made within one year prior to the Petition Date.

15.      The Transfer was made to or for the benefit of Aldis, a creditor of the Debtor, and an insider under 11 U.S.C. § 101(31).

16.      The Transfer was made on account of the Debtor's obligations to Aldis on an antecedent debt owed by the Debtor to Aldis.

17.      As of the date of the Transfer, the Debtor was insolvent.

18.      The Transfer therefore enabled Aldis to receive more than it would otherwise receive in the context of the Debtor's' Chapter 7 bankruptcy case, and if the Transfer had not been made.

19.      The Trustee is entitled to a judgment avoiding the Transfer under 11 U.S.C. § 547(b) and recovering such Transfer or the value thereof from Aldis for the benefit of the estate under 11 U.S.C. § 550.

1010515.1

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

## SECOND CLAIM FOR RELIEF
### (Recovery from General Partner of Aldis)

20.     Redact, LLC is a general partner of Aldis.  As such, Redact is liable for the Transfer by operation of law.

21.     Therefore, Trustee is entitled to a judgment avoiding the Transfer under 11 U.S.C. § 547(b) and recovering such Transfer or the value thereof from Redact for the benefit of the estate under 11 U.S.C. § 550.

## THIRD CLAIM FOR RELIEF
### (Recovery from Immediate Transferee of Aldis)

22.     On information and belief, following receipt of the Trustee's demand letter attached as Exhibit C, Aldis transferred substantially all of its assets (which Aldis received in the Transfer from the Debtor) to the Alaskan Universal Irrevocable Trust (the "Trust").

23.     The transfer by Aldis to the Trust was not for value and was not in good faith. Such transfer was made with full knowledge of the voidability of the Debtor's Transfer to Aldis.


WHEREFORE, Plaintiff requests that this Court enter a judgment:

A.      Declaring that the Transfer constitutes an avoidable preferential transfer pursuant to 11 U.S.C. § 547;

B.      Avoiding the Transfer;

C.      For a judgment in the amount of $515,864.00 against Aldis Manufacturing Ltd.;

D.      For a judgment in the amount of $515,864.00 against Redact, LLC;

E.      For a judgment in the amount of $515,864.00 against the Alaskan Universal Irrevocable Trust;

F.      Awarding pre-judgment and post-judgment interest from the date of demand at the maximum legal rate; and

Page 4 - **COMPLAINT**

1010515.1

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

G.      Awarding the Trustee such other legal and equitable relief as may be just and proper.

DATED July 17, 2015                    BALL JANIK LLP


                                       By:  /s/ David W. Criswell
                                           David W. Criswell, OSB # 925930
                                             Attorneys for Plaintiff Kenneth S. Eiler,
                                             Chapter 7 Trustee

Page 5 - **COMPLAINT**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

**Ritter Chemical, LLC to Aldis Manufacturing, Ltd.**
**Forgiveness of Debt/Asset Sale Schedule**
**As of 08/31/13**

**Ritter debt to Aldis**

| | | |
|---|---:|---|
| Per books (IRS) 12/31/13 | $ 341,444 | |
| 2013 Registration Payments (Aldis checks) | $ 4,043 | |
| 2013 Pyxis Payments (Aldis checks) | $ 17,980 | |
| | **$ 363,467** | |

**Assumption of Ritter Obligations per settlement**

| | | |
|---|---:|---|
| Immix Law Group Open payables 8/31/13 | $ 98,840 | |
| Anticipated Immix future items | $ 15,000 | |
| Pyxis Regulatory Consulting Open payables 8/31/13 | $ 33,557 | |
| Anticipated remaining regulatory items | $ 5,000 | |
| | **$ 152,397** | |

**Total Ritter anticipated obligation to Aldis**    **$ 515,864**

**Aldis debt to Ritter**

| | | |
|---|---:|---|
| Royalty per books 8/31/13 | $ 95,501 | |
| Anticipated remaining royalty 2013 | $ 23,150 | |
| | **$ 118,651** | |

**Assumption of Ritter Assets per settlement**

| | | |
|---|---:|---|
| Current Value Data - TGAI Glyphosate China Producers | $ 230,000 | per Janelle's estimate* |
| Less: 38 months amortization (15 year amortization schedule) | $ (48,556) | 2010 registration, mid-year convention for amortz** |
| Book Value Data - Clethodim MUP and EUP registrations | $ 273,509 | per books (historical cost) |
| Less: 38 months amortization (15 year amortization schedule) | $ (57,741) | 2010 registration, mid-year convention for amortz** |
| | **$ 397,213** | |

**Total Aldis anticipated obligation to Ritter**    **$ 515,864**

**JE's (Ritter Chem)**

| | |
|---|---:|
| Registrations - Glyphosate | 230,000.00 |
| Registrations - Clethodim | 273,509.00 |
| Acc. Amortz | 106,296.00 |
| A/P Aldis Mfg | 397,213.00 |

| | |
|---|---:|
| Accounts Receivable - Aldis Mfg | 118,651.00 |
| A/P Aldis Mfg | 118,651.00 |

**Action Required:**

Need an enforceable agreement whereby Aldis assumes remaining obligations above on behalf of Ritter,
and gains title to Data above in return for discharge of Ritter's indebtedness
-Such agreement to be executed by Ian Smith on behalf of Ritter, and Eric Gross, on behalf of Aldis

* Per separate e-mail correspondence from Janelle Kay w/ Pyxis Regulatory Consultants
**assumption is that Ritter has gained benefit in the amortization expense of these assets,
and the 2010 mid-year convention is estimate of in-service date

Exhibit 1
Page 1 of 1

Case 15-03120-rld    Doc 1    Filed 07/17/15

# ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT ("Agreement") is entered into effective as of the date listed on the signature page below, between Ritter Chemical LLC (the "Seller"), a limited liability company organized under the laws of State of Nevada, having its principal office at 26099 SW 95th Ave., Ste. 601, Wilsonville, OR 97070, and Aldis Manufacturing Ltd (the "Buyer"), a company organized under the laws of Texas, having its principal office at 9282 Baythorne Dr., Houston, TX 77041.

## RECITALS

A.     The Seller is the owner of certain assets the Buyer desires to purchase, and the Seller desires to sell those certain assets to Buyer for valuable consideration; and

B.     The Seller has certain debt obligations to Buyer and other parties. Seller desires to sell certain assets in exchange for forgiveness of debt obligations Seller and Buyer owe to each other and the assumption by Buyer of certain debt obligations Seller has to third parties.

NOW, THEREFORE, in consideration of the premises and the mutual promises herein contained, and intending to be legally bound, the parties agree as follows:

## AGREEMENT

1.     <u>Sale</u>. The Seller agrees to sell to the Buyer, and the Buyer agrees to buy from the Seller, the following:

   1.1     Those assets of Seller's business commonly known as Data for TGAI Glyphosate China Producers and Data for Clethodim MUP and EUP Registrations ("Assets"), all of which are more fully described and enumerated in Exhibit A which is attached and by this reference made a part hereof; and

   1.2     The data and documentation rights associated with the Assets.

2.     <u>Valuation of Assets</u>. Both parties agree to establish a fair market value of the Assets by 1) using an estimate prepared by a third party consultant with industry expertise, 2) using the Seller's book value of the Assets, or 3) a combination of the above methods (the "Fair Market Value"). A calculation of Fair Market Value and any supporting documentation is attached to this Agreement as Schedule 2 and thereby incorporated hereof.

3.     <u>Purchase Price</u>. The Buyer shall pay the Seller as the purchase price for the Assets the sum of $397,213.00 ("Purchase Price"), which shall equal the Fair Market Value. The Purchase Price shall be payable at the time of execution of this Agreement. The Purchase Price shall be payable to Seller by Buyer through a combination of forgiveness of Seller's debt obligations to Buyer (offset by forgiveness of Buyer's debt obligations to Seller), and Buyer's assumption of Seller's debt obligations to other parties (the "Assumed Debts"). The parties shall execute a Debt Forgiveness Agreement substantially in the form of the attached Exhibit B, an Assumption of Debt Agreement substantially in the form of Exhibit C, and a Bill of Sale substantially in the form of Exhibit D.

Exhibit 2
Page 1 of 18

Case 15-03120-rld    Doc 1    Filed 07/17/15

4. <u>Covenants of the Seller.</u>

   4.1 Upon the effective date of this Agreement, the Seller shall execute and deliver a Debt Forgiveness Agreement between Buyer and Seller, substantially in the form of Exhibit B.

   4.2 Upon the effective date of this Agreement, the Seller shall execute and deliver an Assumption of Debt Agreement between Buyer and Seller, substantially in the form of Exhibit C.

   4.3 Upon the effective date of this Agreement, the Seller shall execute and deliver to the Buyer a Bill of Sale, substantially in the form of the attached Exhibit D. The Seller shall also deliver to the Buyer any data or documentation associated with the Assets and take any other reasonable measures necessary to effectuate the terms of this agreement and transfer ownership of the Assets.

5. <u>Covenants of the Buyer.</u>

   5.1 The Buyer shall pay the purchase price according to the terms of Section 2 of this Agreement.

   5.2 Upon the effective date of this Agreement, the Buyer shall execute and deliver a Debt Forgiveness Agreement between Buyer and Seller, substantially in the form of Exhibit B.

   5.3 Upon the effective date of this Agreement, the Buyer shall execute and deliver an Assumption of Debt Agreement between Buyer and Seller, substantially in the form of Exhibit C.

   5.4 Except as expressly provided otherwise in this Agreement, the Buyer assumes no other obligations or liabilities of the Seller as a result of executing this Agreement.

6. <u>Indemnification.</u>

   6.1 The Seller agrees to indemnify, defend, and hold harmless the Buyer against any and all claims, losses, damages, liabilities, and expenses reasonably incurred by the Buyer as a result of any act or failure to act of the Seller incurred prior to the effective date of this Agreement.

   6.2 The Buyer shall give the Seller notice of all relevant claims, reasonably cooperate with the Seller in the defense of the claim, and give the Seller the right to control the defense or settlement of the claim. The Buyer agrees not to enter into any settlement that materially affects the Seller's rights or interests without the Seller's prior written approval. The Buyer shall have the right to reasonably participate in the defense of any claims at its own expense.

**Exhibit 2**
**Page 2 of 18**

Case 15-03120-rld    Doc 1    Filed 07/17/15

7. <u>General Provisions.</u>

7.1     Authority & Binding Effect. Each individual signing this Agreement hereby represents and warrants that he or she has full right, power, and authority to execute this Agreement on behalf of the party for which he or she signs and to perform the actions contemplated hereby. Each party represents and warrants that upon execution this Agreement will be a legal, valid, and binding obligation on the party, enforceable against the party in accordance with this Agreement's terms.

7.2     Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument.

7.3     Notices. All notices required or permitted under this Agreement shall be in writing and shall be deemed duly given: (a) after mailing by first class certified mail, postage prepaid; (b) if delivered personally or by courier; or (c) upon the sender's receipt of confirmation of the receiver's receipt of the notice if sent via facsimile or electronic mail. Notices must be delivered to such addresses set forth on the signature page below, which may be amended from time to time.

7.4     Relationship of Parties. Nothing in this Agreement shall be deemed to create a partnership, joint venture, or agency relationship between the parties. Neither party has the authority to enter into any contracts on behalf of the other or otherwise bind or act on behalf of the other party. Neither party shall assume or be subject to any fiduciary duty or obligation of trust to the other party, or any other implied legal obligation as a result of executing this Agreement.

7.5     Waiver. No waiver of any provision, breach, right or remedy under this Agreement will be valid or binding unless executed in writing by the party making the waiver. No waiver will constitute a waiver of any other provision, breach, right or remedy under this Agreement, and no waiver will constitute a continuing waiver.

7.6     Governing Law. The construction, interpretation and performance of this Agreement shall be governed by and construed in all respects in accordance with the laws of the State of Oregon, without giving effect to the principles of conflicts of law.

7.7     Jurisdiction and Venue. Venue in any action brought with respect to this Agreement shall be in the state or federal courts located in Multnomah County, Oregon, and each party consents to the jurisdiction of the courts located there.

7.8     Construction. This Agreement shall be construed as a whole and in accordance with its fair meaning and without regard to any presumption or other rule requiring construction against the party causing this Agreement or any part hereof to be drafted.

**Exhibit 2**
**Page 3 of 18**

Case 15-03120-rld    Doc 1    Filed 07/17/15

7.9　Severability. Each provision of this Agreement shall be treated as a separate and independent clause, and the unenforceability of any one clause will in no way impair the enforceability of any of the other clauses in this Agreement. If any provision of this Agreement is for any reason held to be void or unenforceable as written, the parties intend that (a) such provision be enforced to the extent permitted by law, and (b) the balance of the Agreement remain in full force and effect.

7.10　Entire Agreement. This Agreement is the sole and entire Agreement between the parties relating to the subject matter hereof, and this Agreement supersedes all prior and contemporaneous negotiations, understandings or agreements between the parties relating to this subject matter.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the effective date stated below.

EFFECTIVE DATE: September 1, 2013

**SELLER:**

RITTER CHEMICAL LLC

By: Redact, LLC,
Manager of Ritter Chemical LLC

By: The Louisiana Investment Trust,
Manager of Redact, LLC

By: _____
　　G.I. Smith, Trustee

Information for Notices
Address: _____
_____
Email: _____
Fax: _____

**BUYER:**

ALDIS MANUFACTURING LTD

By: _____
Name: Eric Gross
Title: _____

Information for Notices
Address: _____
_____
Email: _____
Fax: _____

**SCHEDULE 2**

**FAIR MARKET VALUE OF ASSETS**

| | |
|---|---|
| Current value of data for TGAI Glyphosate China Producers per Pyxis Consulting estimate | $230,000 |
| LESS: 38 months of amortization on 15 year schedule | $(48,556) |
| Book value of data for Clethodim MUP and EUP registrations on historical cost basis | $273,509 |
| LESS: 38 months of amortization on 15 year schedule | $(57,741) |
| TOTAL | $397,213 |

**Elliott Dale**

From:          Janelle Kay <Janelle@PyxisRC.com>
Sent:          Monday, October 7, 2013 2:49 PM
To:            Elliott Dale
Cc:            Robert Scott; Jerry Carleton; ERIC GROSS (aldisman503@gmail.com)
Subject:       Fair Market Value of Data for TGAI Glyphosate Producers

Elliott,

I reviewed the data submitted by Ritter Chemical LLC in support of its Glyphosate technical registration. I also considered data submitted in support of its Kull 41 S registration and Kull 62 MUP which also included some information on the technical sources for Ritter's technical registration. These type of data generally included detailed manufacturing processes, 5-batch analyses, analytical methods, and physical/chemical characteristics. I estimated the replacement costs for these data, based on my expertise in this area and working with laboratories that conduct these types of studies, to be approximately $230,000.

Regards,

Janelle

Janelle Kay
Pyxis Regulatory Consulting, Inc.
4110 136th St. Ct. NW
Gig Harbor, WA 98332
(T): 1-253-853-7369
(F): 1-253-853-5516
(E): Janelle@PyxisRC.com

1

**Exhibit 2**
**Page 6 of 18**

Case 15-03120-rld    Doc 1    Filed 07/17/15

# EXHIBIT A

## DESCRIPTION OF ASSETS

| MRID | Study Name | Lab/Person Who Conducted Study | Date Study Submitted to EPA |
|------|-----------|-------------------------------|----------------------------|
| 46378201 | Kull 41S: Product Properties B Group A. | Technology Sciences Group, Inc., and Frederick Institute of Plant Protection | 10/5/04 |
| 46378301 | Kull 50 S: Product Properties B Group A. | Frederick Institute of Plant Protection | 10/5/04 |
| 46380401 | Product Properties – Group A: Kull 62 MUP | Frederick Institute of Plant Protection | 10/12/04 |
| 46400601 | Product Properties Group A: Kull TGAI Glyphosate | Frederick Institute of Plant Protection | 11/9/04 |
| 46494301 | Product Properties – Group B: Kull 62 MUP | Technology Sciences Group, Inc. | 3/14/05 |
| 46505901 | Kull 41S [Basic Formulation] & Kull 41 [Alternative Formulation]: Product Properties – Group B. | Technology Sciences Group, Inc. | 3/24/05 |
| 46506201 | Kull 50 S [Basic Formulation] & Kull 50 [Alternate Formulation]: Product Properties – Group B | Technology Sciences Group, Inc. | 3/24-05 |
| 46958601 | Product properties – Group A & B: Alecto H2O Herbicide. | Technology Sciences Group, Inc. | 10/17/06 |
| 47043601 | Kull 41 S: Product Properties – Group A. | Technology Sciences Group | 1/31/07 |
| 47657201 | Clethodim 26.4% EC: Product Properties – Part A | Shenyang Research Institute of Chemical Industry | 1/30/09 |
| 47657202 | Clethodim 26.4% EC: Product Properties – Group B | Shenyang Research Institute of Chemical Industry; Technology Sciences Group, Inc.; Chilworth Technology, Inc. | 1/30/09 |
| 47856001 | Discussion of the Impurities of Clethodim 24.6% EC. | Technology Sciences Group, Inc. | 9/17/09 |
| 48061201 | Product Identity and Composition, Description of the Materials Used, Description of the Production Process, Discussion of the Formation of Impurities, Certified Limits, and Enforcement Analytical Method | A Tillman, for Ritter Chemical, LLC | 4/12/10 |

| MRID | Study Name | Lab/Person Who Conducted Study | Date Study Submitted to EPA |
|---|---|---|---|
| | for Kull TGAI Glyphosate. | | |
| 48061202 | Preliminary Analysis: Technical Glyphosate: Final Report | Eurofins/Product Safety Laboratories | 4/12/10 |
| 48061203 | Product Identity and Composition, Description of the Materials Used, Description of the Production Process, Discussion of the formation of Impurities, Certified Limits, and Enforcement Analytical Method for Kull TGAI Glyphosate | A Tillman, for Ritter Chemical, LLC | 4/12/10 |
| 48061204 | Purity Profile for 5 batches of Glyphosate Technical | Anadiag S. A. | 4/12/10 |
| 48061205 | Product Identity and Composition, Description of the Materials Used, Description of the Production Process, Discussion of the Formation of Impurities, Certified Limits, and Enforcement Analytical Method for Kull TGAI Glyphosate. | A Tillman, for Ritter Chemical, LLC | 4/12/10 |
| 48061206 | 5 Batch Analysis of Glyphosate Technical Material for Active Content, Relevant Impurities, Significant Impurities, Materials Insoluble in NaOH, & Water Content | Life Scientific Ltd., Sinochem Shanghai Corporation | 4/12/10 |
| 48273801 | Product Identity and Composition, Description of the Materials Used, Description of the Production Process, Discussion of the Formation of Impurities, Certified Limits, and Enforcement Analytical Method for Ritter Clethodim MUP. | A Tillman for Ritter Chemical, Inc. | 10/26/10 |
| 48273802 | Physical and Chemical Characteristics of Clethodim 37% MUP: Color, Physical State, Odor, Stability, Oxidation / Reduction, flammability, pH, Viscosity and Relative Density. | Case Consulting laboratories, Inc. | 10/26/10 |
| 48273803 | Physical and Chemical Property Waiver Requests for Ritter | A Tillman for Ritter Chemical, LLC | 10/26/10 |

Exhibit 2
Page 8 of 18

Case 15-03120-rld    Doc 1    Filed 07/17/15

| MRID | Study Name | Lab/Person Who Conducted Study | Date Study Submitted to EPA |
|---|---|---|---|
| | Clethodim MUP. | | |
| 48739101 | Physical and Chemical Characteristics of Clethodim 37% MUP: Storage Stability and Corrosion Characteristics: Final Report | Case Consulting Laboratories, Inc. | 2/7/12 |
| 49190001 | Physical and Chemical Characteristics of Clethodim 37% MUP: Storage Stability and Corrosion Characteristics: Amended Final Report | Case Consulting Laboratories, Inc. | 8/2/13 |

## EXHIBIT B

## DEBT FORGIVENESS AGREEMENT

This DEBT FORGIVENESS AGREEMENT ("Forgiveness Agreement"), is entered into effective as of September 1, 2013 (the "Effective Date"), between Ritter Chemical LLC, ("Seller") a Nevada limited liability company, and Aldis Manufacturing Ltd ("Buyer"), a Texas limited partnership.

A. Pursuant to a purchase agreement made as of September 1, 2013 between the Seller and the Buyer (the "Purchase Agreement"), the Seller agreed to sell and the Buyer agreed to buy certain assets of the Seller;

B. The obligations of the Seller under the Purchase Agreement are subject to the satisfaction of certain conditions as therein set out, including the entering of this Forgiveness Agreement by the Buyer;

C. Buyer is indebted to Seller, on an unsecured basis, for an amount equal to approximately $118,651.00 (the "Debt to Seller") and Seller is indebted to Buyer, on an unsecured basis, for an amount equal to approximately $363,467.00 (the "Debt to Buyer") as further described in the attached Schedule "FORGIVENESS OF DEBT LIABILITIES BETWEEN RITTER CHEMICAL LLC AND ALDIS MANUFACTURING LTD";

D. Subject to certain conditions contained in the Purchase Agreement and herein, both parties have determined to forgive their respective debts to each other in their entirety; and

E. Both parties have determined that the forgiveness of their respective debts to each other are in their respective best interests.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. Debt Forgiveness. Buyer hereby forgives the Debt to Buyer in its entirety. Seller hereby forgives the Debt to Seller in its entirety.

2. Representations and Warranties of Buyer. Buyer hereby represents and warrants to Seller as follows:

   a. Organization and Standing. Buyer is a limited partnership duly organized, validly existing and in good standing under the laws of the State of Texas.

   b. Authority. Buyer has full legal capacity and authority to enter into this Forgiveness Agreement and to perform the transactions contemplated herein. This Forgiveness Agreement is the legal, valid and binding obligation of Buyer and is enforceable in accordance with its terms.

     c. Litigation. To the best of Buyer's knowledge, there are no legal actions, suits, arbitration or other legal or administrative proceedings or governmental investigations pending or contemplated against Buyer which would prevent the enforcement of this Forgiveness Agreement.

3. Representations and Warranties of Seller. Seller hereby represents and warrants to Buyer as follows:

     a. Organization and Standing. Seller is a limited liability company duly organized, validly existing and in good standing under the laws of Nevada.

     b. Authority. Seller has full legal capacity and authority to enter into this Forgiveness Agreement and to perform the transactions contemplated herein. This Forgiveness Agreement is the legal, valid and binding obligation of Seller and is enforceable in accordance with its terms.

     c. Litigation. To the best of Seller's knowledge, there are no legal actions, suits, arbitration or other legal or administrative proceedings or governmental investigations pending or contemplated against Seller which would prevent the enforcement of this Forgiveness Agreement.

4. Survival of Representations and Warranties. All representations and warranties of each party shall survive after the conclusion of this Agreement.

5. Conditions of Effectiveness. This Forgiveness Agreement shall be effective only upon the execution and delivery by Buyer and Seller of that certain Purchase Agreement and all of its Exhibits.

    IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the day and year first written above.


**SELLER:**                                   **BUYER:**

RITTER CHEMICAL LLC                           ALDIS MANUFACTURING LTD

  By: Redact, LLC,
  Manager of Ritter Chemical LLC            By: _____
                                              Name: Eric Gross
    By: The Louisiana Investment Trust,    Title: _____
    Manager of Redact, LLC

  By: _____
     G.I. Smith, Trustee

**SCHEDULE TO DEBT FORGIVENESS AGREEMENT:**

**FORGIVENESS OF DEBT LIABILITIES**
**BETWEEN RITTER CHEMICAL LLC ("RITTER")**
**AND ALDIS MANUFACTURING LTD ("ALDIS")**


**DEBT TO SELLER**
**Debt Obligations Owed to Ritter by Aldis**

| | |
|---|---|
| Unsecured debt carried per Aldis accounting records as of December 31, 2012. | $341,444 |
| Payments for registrations made by Aldis on Ritter's behalf as of August 31, 2013 | $4,043 |
| Payments for regulatory consulting made by Aldis on Ritter's behalf as of August 31, 2013 | $17,980 |
| TOTAL | $363,467 |


**DEBT TO BUYER**
**Debt Obligations Owed to Aldis by Ritter**

| | |
|---|---|
| Royalty payments owed to Aldis as of August 31, 2013 per Aldis accounting records | $95,501 |
| Remaining anticipated royalty payments to Aldis for 2013 | $23,150 |
| TOTAL | $118,651 |

## EXHIBIT C

## ASSUMPTION OF DEBTS AGREEMENT

THIS ASSUMPTION OF DEBTS AGREEMENT (the "Assumption Agreement") is entered into effective as of September 1, 2013 (the "Effective Date"), between Ritter Chemical LLC, ("Seller") a Nevada limited liability company, and Aldis Manufacturing Ltd ("Buyer"), a Texas limited partnership.

     A.    Pursuant to a purchase agreement made as of September 1, 2013 between the Seller and the Buyer (the "Purchase Agreement"), the Seller agreed to sell and the Buyer agreed to buy certain assets of the Seller; and

     B.    The obligations of the Seller under the Purchase Agreement are subject to the satisfaction of certain conditions as therein set out, including the entering of this Assumption Agreement by the Buyer;

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each of the parties hereto, it is hereby agree as follows:

1. The Buyer covenants and agrees to assume, pay, perform, and discharge, when due, and indemnify the Seller from and against the following liabilities as of the date hereof, all of the debt obligations and liabilities listed on the attached Schedule, "ASSUMPTION OF RITTER CHEMICAL LLC DEBT LIABILITIES BY ALDIS MANUFACTURING LTD".

2. This Assumption Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns.

     IN WITNESS WHEREOF, this agreement has been executed by the parties hereto as of the date first written above.


**SELLER:**

RITTER CHEMICAL LLC

    By: Redact, LLC,
    Manager of Ritter Chemical LLC

     By: The Louisiana Investment Trust,
    Manager of Redact, LLC

    By: _____
      G.I. Smith, Trustee


**BUYER:**

ALDIS MANUFACTURING LTD

By: _____
Name: _____
Title: _____

## SCHEDULE TO ASSUMPTION OF DEBTS AGREEMENT:

## ASSUMPTION OF RITTER CHEMICAL LLC DEBT LIABILITIES
## BY ALDIS MANUFACTURING LTD

**Debt Obligations Assumed by Aldis Manufacturing Ltd**

| | |
|---|---|
| Legal expenses incurred by Ritter Chemical LLC payable to Immix Law Group PC as of August 31, 2013 | $98,840 |
| Remaining anticipated legal expenses for 2013 | $15,000 |
| Regulatory consulting expenses incurred by Ritter Chemical LLC payable to Pyxis Consulting as of August 31, 2013 | $33,557 |
| Remaining anticipated regulatory consulting expenses for 2013 | $5,000 |
| TOTAL | $152,397 |

Exhibit 2
Page 14 of 18

## EXHIBIT D

## BILL OF SALE

This Bill of Sale is between Ritter Chemical LLC (the "Seller"), a Nevada limited liability company and Aldis Manufacturing Ltd (the "Buyer"), a Texas limited partnership.

### Agreement

FOR VALUABLE CONSIDERATION, receipt of which is acknowledged, the parties agree as follows:

(1)     The Seller hereby grants, bargains, sells, transfers, and delivers to the Buyer all of the Seller's right, title, and interest in and to the items of personal property (the "Property") listed on the attached Schedule "PROPERTY SOLD BY RITTER CHEMICAL LLC TO ALDIS MANUFACTURING LTD."

(2)     The Seller represents and warrants to the Buyer that the Seller is the sole owner of the Property, that the Seller has good title to the Property, and that the Property is free and clear of all liens, security interests, options, and encumbrances.

(3)     The Seller will execute and give to the Buyer such other documents and perform such other acts as the Buyer may reasonably request to accomplish the purposes of this Bill of Sale.

(4)     The Buyer accepts the Property subject to the terms and conditions in this Bill of Sale.

(5)     This Bill of Sale has been negotiated, prepared, and executed in accordance with the laws of the state of Oregon and will be construed in accordance with those laws.

DATED AS OF: September 1, 2013.

**SELLER:**                              **BUYER:**

RITTER CHEMICAL LLC              ALDIS MANUFACTURING LTD

By: Redact, LLC,
Manager of Ritter Chemical LLC       By: _____
                                     Name: _____
By: The Louisiana Investment Trust,  Title: _____
Manager of Redact, LLC

By: _____
     G.I. Smith, Trustee

**Exhibit 2**
**Page 15 of 18**

Case 15-03120-rld    Doc 1    Filed 07/17/15

## SCHEDULE TO BILL OF SALE:

## PROPERTY SOLD BY RITTER CHEMICAL LLC TO
## ALDIS MANUFACTURING LTD

| MRID | Study Name | Lab/Person Who Conducted Study | Date Study Submitted to EPA |
|------|-----------|-------------------------------|------------------------------|
| 46378201 | Kull 41S: Product Properties B Group A. | Technology Sciences Group, Inc., and Frederick Institute of Plant Protection | 10/5/04 |
| 46378301 | Kull 50 S: Product Properties B Group A. | Frederick Institute of Plant Protection | 10/5/04 |
| 46380401 | Product Properties -- Group A: Kull 62 MUP | Frederick Institute of Plant Protection | 10/12/04 |
| 46400601 | Product Properties Group A: Kull TGAI Glyphosate | Frederick Institute of Plant Protection | 11/9/04 |
| 46494301 | Product Properties – Group B: Kull 62 MUP | Technology Sciences Group, Inc. | 3/14/05 |
| 46505901 | Kull 41S [Basic Formulation] & Kull 41 [Alternative Formulation]: Product Properties – Group B. | Technology Sciences Group, Inc. | 3/24/05 |
| 46506201 | Kull 50 S [Basic Formulation] & Kull 50 [Alternate Formulation]: Product Properties – Group B | Technology Sciences Group, Inc. | 3/24-05 |
| 46958601 | Product properties – Group A & B: Alecto H2O Herbicide. | Technology Sciences Group, Inc. | 10/17/06 |
| 47043601 | Kull 41 S: Product Properties – Group A. | Technology Sciences Group | 1/31/07 |
| 47657201 | Clethodim 26.4% EC: Product Properties – Part A | Shenyang Research Institute of Chemical Industry | 1/30/09 |
| 47657202 | Clethodim 26.4% EC: Product Properties – Group B | Shenyang Research Institute of Chemical Industry; Technology Sciences Group, Inc.; Chilworth Technology, Inc. | 1/30/09 |
| 47856001 | Discussion of the Impurities of Clethodim 24.6% EC. | Technology Sciences Group, Inc. | 9/17/09 |
| 48061201 | Product Identity and Composition, Description of the Materials Used, Description of the Production Process, Discussion of the Formation of Impurities, Certified Limits, and | A Tillman, for Ritter Chemical, LLC | 4/12/10 |

| MRID | Study Name | Lab/Person Who Conducted Study | Date Study Submitted to EPA |
|------|------------|-------------------------------|------------------------------|
|  | Enforcement Analytical Method for Kull TGAI Glyphosate. |  |  |
| 48061202 | Preliminary Analysis: Technical Glyphosate: Final Report | Eurofins/Product Safety Laboratories | 4/12/10 |
| 48061203 | Product Identity and Composition, Description of the Materials Used, Description of the Production Process, Discussion of the formation of Impurities, Certified Limits, and Enforcement Analytical Method for Kull TGAI Glyphosate | A Tillman, for Ritter Chemical, LLC | 4/12/10 |
| 48061204 | Purity Profile for 5 batches of Glyphosate Technical | Anadiag S. A. | 4/12/10 |
| 48061205 | Product Identity and Composition, Description of the Materials Used, Description of the Production Process, Discussion of the Formation of Impurities, Certified Limits, and Enforcement Analytical Method for Kull TGAI Glyphosate. | A Tillman, for Ritter Chemical, LLC | 4/12/10 |
| 48061206 | 5 Batch Analysis of Glyphosate Technical Material for Active Content, Relevant Impurities, Significant Impurities, Materials Insoluble in NaOH, & Water Content | Life Scientific Ltd., Sinochem Shanghai Corporation | 4/12/10 |
| 48273801 | Product Identity and Composition, Description of the Materials Used, Description of the Production Process, Discussion of the Formation of Impurities, Certified Limits, and Enforcement Analytical Method for Ritter Clethodim MUP. | A Tillman for Ritter Chemical, Inc. | 10/26/10 |
| 48273802 | Physical and Chemical Characteristics of Clethodim 37% MUP: Color, Physical State, Odor, Stability, Oxidation / Reduction, flammability, pH, Viscosity and Relative Density. | Case Consulting laboratories, Inc. | 10/26/10 |
| 48273803 | Physical and Chemical Property | A Tillman for Ritter | 10/26/10 |

Exhibit 2
Page 17 of 18

Case 15-03120-rld    Doc 1    Filed 07/17/15

| MRID | Study Name | Lab/Person Who Conducted Study | Date Study Submitted to EPA |
|---|---|---|---|
| | Waiver Requests for Ritter Clethodim MUP. | Chemical, LLC | |
| 48739101 | Physical and Chemical Characteristics of Clethodim 37% MUP: Storage Stability and Corrosion Characteristics: Final Report | Case Consulting Laboratories, Inc. | 2/7/12 |
| 49190001 | Physical and Chemical Characteristics of Clethodim 37% MUP: Storage Stability and Corrosion Characteristics: Amended Final Report | Case Consulting Laboratories, Inc. | 8/2/13 |



ball janik LLP

101 SW Main Street, Suite 1100
Portland, Oregon 97204

balljanik.com

t 503.228.2525
f 503.295.1058

March 16, 2015

David W. Criswell
Admitted in Oregon and Washington
dcriswell@balljanik.com

Aldis Manufacturing Ltd.
c/o Incorp Services, Inc.
815 Brazos, Suite 500
Austin, TX 78701-0000

Re: *In re Ritter Chemical, LLC*
United States Bankruptcy Court for the District of Oregon,
Case No. 14-30160-rld7

To Whom It May Concern:

I represent Kenneth Eiler, Trustee of the estate of Ritter Chemical, LLC ("Ritter").

The Trustee has reviewed the records of Aldis Manufacturing Ltd. ("Aldis") and Ritter and the testimony of Eric Gross from the Rule 2004 Examination conducted on January 22, 2015. That evidence reflects that Aldis, an insider, received a preferential transfer from the Debtor within one year before the Ritter petition date.

Within one year prior to the petition date, Ritter transferred assets and property and forgave obligations worth not less than $515,864.00 in the aggregate to Aldis on account of alleged antecedent debt owing to Aldis in that same amount. The transfer was made at a time Ritter was insolvent and allowed Aldis to receive more than it would have in a case under Chapter 7.

The transfer is avoidable and recoverable by the Trustee under the provisions of 11 USC §§ 547(b) and 550(a).

The Trustee hereby demands the immediate repayment of $515,864.00. Aldis should make its check payable to Kenneth Eiler, Trustee.

If an acceptable settlement cannot be reached within thirty (30) days of the date of this letter, the Trustee will commence an adversary proceeding.

Very truly yours,

DWCll

David W. Criswell
DWC:sw
cc: Kenneth S. Eiler

994922.1

**Exhibit 3**
**Page 1 of 1**